OPINION
{¶ 1} Appellant, the State of Ohio, appeals the March 23, 2004 dismissal of the delinquency proceedings against the defendant, a juvenile male, age 15, by the Hancock County Court of Common Pleas, Juvenile Division, pursuant to Juv. R. 29(F)(2)(d). Although this appeal has been placed on the accelerated calendar, this court elects to issue a full opinion pursuant to Loc.R. 12(5).
 {¶ 2} On December 24, 2002, the defendant was charged in Hancock County Juvenile Court with two counts of rape under Ohio Revised Code 2907.02 (A)(1)(b). Both charges, if committed by an adult, are felonies in the first degree. The first count in the complaint alleged that between June 1, 2002 and July 17, 2002, the defendant engaged in vaginal intercourse with a girl less than thirteen years of age.[1] The second count alleged that the defendant engaged in fellatio with the same girl during the same time period.
 {¶ 3} On July 7, 2003, defendant's counsel filed a motion to dismiss the charges based on, inter alia, the best interest of the child and community. The next day, both the State and defendant's counsel agreed to submit the case for adjudication based on the facts outlined in a police report attached to the complaint. Additionally, both sides verbally recited to the court a loose trial outline of expected witnesses and testimony. Before the case was submitted, the defendant agreed to withdraw a motion to suppress evidence. Both sides and the court also agreed that the defendant's belief that the victim was fourteen years of age was irrelevant. Furthermore, both sides agreed that, because all the facts were to be taken as true from the police report, the only issue pending before the court was whether, despite the evidence of guilt on the principal charges, the equities of the juvenile law might justify dismissing the case or finding the defendant guilty of a lesser included offense. The record from July 8, 2003 states:
Ms. Johnson: I don't think — the only issue — the only factualissue there is the age issue and we've submitted to you what allof the witnesses would state.
 So, I don't think that there's any need at this point to goforward with the trial. There's no other factual issue in thiscase. It's merely a legal argument by Mr. Needles indicating thatthe equities of the Court in light of the fact that his clientmay or may not have believed she was 14 at the time would justifyreducing the charge or dismissing the charge.
 The Court: Well, let me ask you this from the point of viewplaying the devil's advocate, using the equities theory, does theCourt have the right to find a lesser included offense or byusing the equities, do I either decide it for you or againstyou?
 If I decide against you I must convict him of an F-1. If Idecide in your favor, it's a dismissal. Is there any — can thecourt find a lesser included offense based upon the equities asopposed to the legal argument regarding the degree of theoffense?
 Mr. Needles: You're asking me that question?
 The Court: Yes.
 Mr. Needles: Well, I believe so, yes.
 The Court: The Court can use the lesser included offense?
 Mr. Needles: The Court can do what it can do.
 The Court: I just wanted to get you on the record saying.
 Mr. Needles: Honestly, I think it can do what it wants to do.
Adjudication Hearing Tr. July 8, 2003 at 10-12.
 {¶ 4} Thus, the court and the parties acknowledged that the court had three options: (1) find the defendant delinquent based on the charges pending against him; (2) find the defendant delinquent of a lesser included offense; or (3) dismiss the case based on the interest of the child and community.
 {¶ 5} After taking the defendant's motion under advisement for nearly a year, the court dismissed the case in its entirety on March 23, 2004. The record reflects the court's ruling as follows:
The Court: Uh-hum. I read this sometime ago. I remember theproblematic aspect of this case had to do with the Ohio SupremeCourt decision In Re: Washington. . . . And In Re: M.D., wherethere was a similar case to this involving sexual conduct betweentwo adolescents. And the Supreme Court of Ohio threw the case outindicating that they didn't feel that that was the type ofsituation that would render itself to a criminal prosecution.
 Unfortunately, they didn't exactly delineate what kind of casethey meant to apply to this type of case, although, I think theunderlying rationale was that there were two young people underthe age of 16 and it was a consensual relationship, that it was aconsensual situation.
 I think had there been any type of force involved, I don'tthink that the result would have come out the way it did. Andthat's obviously what we had in this particular case. I don'tthink there was any force involved at all.
 I think had this charge been brought as a, in fact, even acontributing to the unruliness case, I think it might have beenenough to sustain a conviction.
 But I think under the rationale of this particular case, andin the M.D. case, the young man was younger than you were at thetime that this happened. But I think the rationale of the statutewas not meant to apply to this particular situation.
 So, again, I've spent a lot of time looking at this thing andthat's the reason it's taken me so long to come up with aconclusion.
* * *
So I guess I would find that the M.D. case would apply in thiscase and this should not be a — this type of fact situationshould not be the basis of criminal conviction.
 And, obviously, it would have been a very serious criminalconviction. It would have been a felony in the first degree. Andit seems rather strange that a felony of the first degree wouldbe dismissed under this type of situation, but I don't think itwas meant to apply to this type of situation.
 So I'm going to order that the case be dismissed then.
* * *
The Court: You kind of got off here. You know, this is — notat your age right now, I don't think it would have had the sameresult.
Judgment Hearing Tr. March 23, 2004 at 5-8.
 {¶ 6} Based on a specific request from the State, the court announced findings of fact and conclusions of law. In its ruling, the trial court made the following factual findings:
1. The factual allegations contained in Counts One and Two ofthe complaint are true.
 2. At the time of the offense, the Defendant was fifteen yearsof age and the victim was twelve.
 3. At no time did the Defendant subject the victim to forceand all sexual contacts were consensual.
 4. If a finding of guilt is rendered then the Defendant wouldstand convicted of two counts of rape, offenses that would befelonies of the first degree if committed by an adult and wouldbe subject to sanctions that could include lengthy incarcerationand all the stigmas attendant with being a convicted felon.
 5. The State of Ohio chose not to charge the Defendant with alesser offense that might be more commensurate with the gravityof the act. (e.g. Contributing to the Unruliness of a Minor).
Findings of Fact and Conclusions of Law at 1, April 23, 2004.
 {¶ 7} Furthermore, the court, citing Juvenile Rule 29(F)(2)(d), found that the dismissal of the rape charges was "in the best interest of the child and community." Id. As a result, this appeal followed alleging one assignment of error.
The trial court abused its discretion in dismissing thecomplaint pursuant to juvenile Rule 29 and its actions werecontrary to law.
 {¶ 8} In this assignment of error, the State alleges that the trial court abused its discretion by dismissing the rape charges pending against the defendant pursuant to Juvenile Rule 29(F)(2)(d), which provides as follows:
(F) Procedure upon determination of the issues. Upon thedetermination of the issues, the court shall do one of thefollowing:
* * *
(2) If the allegations of the complaint, indictment, orinformation are admitted or proven, do any one of the following,unless precluded by statute:
 (a) Enter an adjudication and proceed forthwith todisposition;
 (b) Enter an adjudication and continue the matter fordisposition for not more than six months and may make appropriatetemporary orders;
 (c) Postpone entry of adjudication for not more than sixmonths;
 (d) Dismiss the complaint if dismissal is in the best interestof the child and the community.
 {¶ 9} Juvenile Rule 29(F)(2) vests the trial court with discretion to adjudicate and dispose of a case. In re Bynum
(Feb. 17, 2000), 8th Dist. No. 75672, unreported. Whether a delinquency proceeding should be dismissed or reach the merits is within the sound discretion of the trial judge. In re N.K., 8th Dist. No. 82332, 2003-Ohio-7059, at ¶ 23. A dismissal under Juvenile Rule 29(F)(2)(d), however, must be based upon the "best interest of the child and the community." The standard of review in this context is abuse of discretion. See, e.g. In re Smith
(1992), 80 Ohio App.3d 502, 504, 609 N.E.2d 1281 (per curiam) (reviewing an appeal from the State after a trial judge dismissed a juvenile complaint as being in the best interest of the child). "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140, 5 O.B.R. 481.
 {¶ 10} In In re Smith, the defendant, a ten year old boy, was charged with engaging in sexual contact with a girl less than thirteen years of age. In re Smith, 80 Ohio App.3d at 503. After a psychological evaluation was performed and a competency hearing was held before a referee, the referee concluded that the defendant was competent to stand trial. Id. Smith subsequently filed a motion to dismiss the complaint. The referee recommended that the motion be overruled and that a preliminary hearing be held to determine whether the case should proceed to trial. Id. The referee concluded, in relying on In re M.D. (1988),38 Ohio St.3d 149, 527 N.E.2d 286, that the case should only proceed to trial if the State established that Smith, due to his age, was capable of the sexual conduct alleged in the complaint. Id. Furthermore, the referee indicated that such a hearing would "further the purposes and policies of the juvenile law as reflected in R.C. Chapter 2151." Id. The State objected to the referee's recommendation, but the trial court, "in light of In re M.D., [concluded that] the referee had not erred in recommending that a pretrial hearing be held where the state would have the opportunity to establish the reasonableness of the filing consistent with public policy and to rebut the presumption of incapability." Id. at 503-04. The trial court concluded:
[A]n examination of the complaint, police reports, clinicalevaluation, and legal memorandum in this particular case,requires that the defendant's motion to dismiss should begranted. The alleged incident occurred a year ago when thedefendant was 10 years old. The psychiatric evaluation reportsthe defendant's rudimentary understanding of sexual concepts. Thepolice report indicates that the defendant was implicated by the10 year old co-defendant.
Id.
 {¶ 11} In affirming the trial court's decision to dismiss the charges pending against Smith, the appellate court also observed:
* * * the juvenile court's decision in the case at barrested, despite some imprecise language in its entry, upon thecourt's conclusion that continuing prosecution of the delinquentrape charge against Smith would not further the policies of thisstate as expressed in the Juvenile Code and the Rules of JuvenileProcedure.
* * *
Had we been sitting as the juvenile court, we would have beeninclined to approve the recommendation of the referee that apreliminary hearing be held to determine whether the mattershould proceed on the charge of rape or be diverted for treatmentor amend to a more appropriate charge. Such a hearing wouldbest protect the interests of the child and the community, in ourview.
Id. at 505 (emphasis added).
 {¶ 12} In In re M.D., the defendant, a female then age twelve, was charged with one count of complicity to commit rape.In re M.D., 38 Ohio St.3d at 150, 527 N.E.2d 286, paragraph two of the syllabus. The complaint alleged that M.D. "unlawfully caused an innocent and irresponsible person, David (then age five), to commit rape on Cassie (then age five)." Id. Specifically, "[t]he three children testified that they, with M.D., were `playing doctor,' and that at the direction of M.D., David dropped his pants and placed his penis in Cassie's mouth, ostensibly because M.D. had instructed them to take temperature that way." Id. at paragraph three of the syllabus. The trial court found the complaint to be true and, subsequently, adjudicated M.D. to be delinquent. Id. The court of appeals affirmed, and the Supreme Court of Ohio reversed. Id. at 154.
 {¶ 13} The Supreme Court of Ohio based its ruling on its conclusion that the crime, i.e. rape, did not occur. Id. at 151 ("Here, the underlying offense of rape did not occur.") The Court further stated:
Even assuming, however, given the paucity of the record beforeus, that the conduct here technically involved a "rape" as thatterm is statutorily defined, we hold that prosecution of M.D.under these circumstances violates the underlying public policyof this state as expressed in R.C. Chapter 2151 and the Rules ofJuvenile Procedure.
Id. at 152-53.
 {¶ 14} In reliance on Juvenile Rule 1(B)[2] and Juvenile Rule 9,[3] the Court declared that "[t]he best interests of the child and the welfare and protection of the community are paramount considerations in every juvenile proceeding in this state." Id. at 153.
 {¶ 15} In In re M.D., the Supreme Court of Ohio found several reasons why a dismissal of the case was in the best interest of the child and the community. Id. at 153-54. First, the Court noted that charging the ten year old female was contradictory to the Cuyahoga County Juvenile Court intake policy.[4] Id. at 153 (footnote added). Second, the Court recounted that the young victims' family petitioned the juvenile court judge to dismiss the action. Id. Third, the Supreme Court of Ohio referred to the mental health reports prepared by the State that signified that M.D. was a "normal pre-teen who enjoys being with her friends, listening to music, roller skating and swimming." More specifically, the psychological reports indicated that M.D.
gave no compelling evidence to suggest or support . . . [her]involvement in the crime for which she has been found guilty. Herprofile deviates markedly when compared with the profiles ofother sex offenders. . . . Negative community relationships asidentified by . . . [her] and her parents and supported by thetesting are of particular concern. . . . [She] (and her family)ha[ve] had to endure incredible and persistent harassment as aresult of this incident.
Id. at 154 (citing the mental health report) (alteration in original). Finally, the Court reviewed the impact the case had on M.D., the victim, and their parents by emphasizing that the defendant was "saddled with the `taint of criminality' by this adjudication for a felony sex offense under circumstances where `sex' played but a minute role." Id.
 {¶ 16} In our view, the trial court's methodology in both Inre Smith and In re M.D., provide structural and analytical insight for addressing a Juvenile Rule 29(F)(2)(d) dismissal. Although ultimately not held to be a required element of the process, both juvenile courts reviewed the defendants' and the victims' age and mental capacity. Moreover, both juvenile courts in In re Smith and In re M.D. relied on the conclusions presented in mental health reports which pertained to the impact upon both children involved in each incident. Finally, we note with approval the suggestion in In re Smith, of an evidentiary hearing specifically directed to "the best interest of the child and the community," especially where a dismissal under Juv. R. 29(F)(2)(d) is openly contemplated by the court and the parties prior to the adjudication process, as it was here.
 {¶ 17} Unfortunately, in contrast with the Smith and M.D.
cases, supra, there is virtually nothing in this record to support the conclusions of the trial court as to the "best interest of the child and the community." Instead, the juvenile court in this case appeared to rely on factors which were essentially irrelevant to the charged crime as well as the court's own indication that even though true, these allegations "should not be the basis of a criminal conviction" and that the criminal statute in this case "was not meant to apply to this type of situation."
 {¶ 18} For example, the court noted that the sexual encounter was consensual and non-violent, factors which may mitigate the possible disposition but are not defenses to the charge and do not directly bear upon the best interest of the child and the community. The court also declared that a finding of guilt would expose the defendant to severe criminal penalties; however, there was no character evidence, psychological reports, or other impact evidence in the record to assist the trial court in determining, or to assist this Court in reviewing, whether a dismissal was, in fact, in the best interest of the child and the community. Moreover, submitting the case entirely on the joint stipulation of counsel deprived the court of the opportunity to observe the testimony of any witness, the alleged victim, or the defendant. As a result, and perhaps most importantly, there are no relevant factual or legal determinations in the record to distinguish the Juv. R. 29(F)(2)(d) dismissal of this case from every other juvenile delinquency case involving a twelve year old and a fifteen year old under the same charge.
 {¶ 19} In the absence of anything in the record to establish why a dismissal was in the best interest of the child and the community, and in the absence of any findings by the trial court directed specifically to the best interest of the child and the community, we cannot conclude that the provisions of Juvenile Rule 29(F)(2)(d) were followed in this case. Under these circumstances we must find that the trial court's dismissal of the charges constituted an abuse of discretion. Moreover, we find that where the court grants a Juv. R. 29(F)(2)(d) dismissal based on factors unrelated to the requirements of the Rule, and where the court also indicates that the conduct of the defendant, accepted as true and proscribed by the criminal statutes, does not constitute a criminal or delinquency offense as a matter of law, that such a dismissal raises a substantive legal issue, capable of repetition yet evading review which is appealable by the state, subject to an evaluation of the double jeopardy implications in the particular case. State v. Bistricky (1990),51 Ohio St. 3d 157, 555 N.E.2d 424. To this extent only, the state's assignment of error is sustained.
 Double Jeopardy {¶ 20} In Breed v. Jones, the United States Supreme Court stated that "in terms of potential consequences, there is little to distinguish an adjudicatory hearing . . . from a traditional criminal prosecution." Breed v. Jones (1975), 421 U.S. 519,530, 95 S.Ct. 1779, 44 L.Ed.2d 346 (holding that after adjudicating a case in juvenile court, the subsequent filing of the same charges in "adult" court violated the defendant's right against double jeopardy). Furthermore, the Court announced that "[j]eopardy attached when respondent was `put to trial before the trier of the facts,' that is when the Juvenile Court, as the trier of the facts, began to hear evidence." Id. at 531 (citingUnited States v. Jorn (1971), 400 U.S. 470, 479, 91 S.Ct. 547,27 L.Ed.2d 543) (internal citations omitted). See also, State v.Penrod (1989), 62 Ohio App. 3d 720, 724, 577 N.E. 2d 424.
 {¶ 21} In this case, the matter was clearly submitted to the juvenile court for adjudication on the merits by joint stipulation of counsel. Moreover, the court accepted the stipulation and made an adjudication, albeit a dismissal under the provisions of Juvenile Rule 29(F)(2)(d). Under these circumstances, it is clear that jeopardy attached to this defendant and that the Rule 29(F)(2)(d) dismissal effectively stands as an acquittal of the charges.[5] As a result, the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution as applied to the States through theFourteenth Amendment and Article I, Section 10 of the Constitution of the State of Ohio prevents the State from initiating any further criminal proceedings against Arnett based on the allegations stated in this complaint. Accordingly, based on the finding of error previously set forth, the judgment of the juvenile court is reversed in part, but affirmed in part insofar as this defendant cannot twice be put in jeopardy and the appellant is discharged.
Judgment Reversed in Part and Affirmed in Part.
 BRYANT and ROGERS, J.J., concur.
[1] There is some discrepancy as to whether the girl was eleven or twelve at the time of the alleged crime. In this particular instance, the matter is irrelevant because she is under the statutory age of thirteen.
[2] Juvenile Rule 1(B) states, in pertinent part, that the rules governing the juvenile law "shall be liberally interpreted and construed . . . (3) to provide for the care, protection, and mental and physical development of children subject to the jurisdiction of the juvenile court, and to protect the welfare of the community; and (4) to protect the public interest by treating children as persons in need of supervision, care and rehabilitation."
[3] Specifically, Juvenile Rule 9(B) states: "Information that a child is within the court's jurisdiction may be informally screened prior to the filing of a complaint to determine whether the filing of a complaint is in the best interest of the child and the public."
[4] A memorandum from the County Juvenile Court legal department stated:
"In situations where there is an allegation of sexual conduct involving no force and both the alleged offender and the victim are under 13 years of age, charges are not to be taken under the above statute. As an alternative, the intake mediator may consider unruly charges on one or both children."
[5] As suggested earlier, where the issue is openly raised and contemplated by the parties and the court before trial, the better practice might favor a Juv. R. 29(F)(2)(d) hearing and determination before trial. However, it is not clear that the Juvenile Rules allow for a Rule 29(F)(2)(d) dismissal in any context other than as part of the adjudicatory phase and we express no opinion on that issue in this case.