[Cite as *In re D.R.*, 2014-Ohio-832.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 100034 and 100035**

---

# IN RE: D.R.

---

## JUDGMENT:
DISMISSED

---

Civil Appeals from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 12119018

**BEFORE:** E.A. Gallagher, J., Boyle, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 6, 2014

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Joseph J. Ricotta
        Daniel T. Van
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Robert Tobik
Cuyahoga County Public Defender
By:   Cullen Sweeney
        Ashley C. Stebbins
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} The state appeals the decision of the trial court dismissing D.R.'s criminal complaint. The state argues that the court was prohibited from both adjudicating a child delinquent and then dismissing the complaint, that the court abused its discretion in dismissing the complaint and that even if the court did properly dismiss part of the complaint, it was required to impose sentence on the remaining charge and specifications. For the following reasons, we find that this court does not have jurisdiction to hear the appeal.

{¶2} On February 23, 2013, D.R. broke into the residence of Ted Ziolkowski, who was present and armed at his home. At approximately 11 p.m. on that date, Ziolkowski heard someone prying open his rear door and then heard wood falling onto the floor. Ziolkowski moved closer to the door, saw it swing open and Ziolkowski fired his weapon at the intruder. He saw D.R. fall to the ground and immediately called 911. When police arrived, they found D.R. lying on the ground next to the rear door with a loaded handgun, a pry bar and a screwdriver in his possession. Ziolkowski told police that he heard D.R. speaking with another individual and that he saw a white SUV parked in front of his house but that the SUV left before police arrived.

{¶3} The state filed a one-count complaint alleging that D.R. was a delinquent child. Specifically, the state claimed that D.R. committed an aggravated robbery, that he possessed and brandished a firearm during the commission of the crime and that he was a

serious youthful offender. D.R. admitted to the complaint and specifications as charged and the trial court found him delinquent.

{¶4} D.R.'s health deteriorated after the adjudication of delinquency. As a result of the gunshot wound to his chest, he underwent emergency surgery, which resulted in aortic stenosis. The aortic stenosis caused poor circulation in D.R.'s lower extremities and resulted in a build up of pressure that had to be surgically relieved. After this second surgery, D.R. developed an infection in the bone that required amputation of his right leg below the knee. Even after D.R.'s third surgery, D.R.'s poor circulation prevented him from supporting a prosthesis, essentially making D.R. wheelchair bound.

{¶5} D.R.'s medical problems were not resolved as of the date of the court's dispositional hearing. At the hearing, Dr. John Bradley, the Chief Medical Director for the Ohio Department of Youth Services, ("ODYS"), testified that D.R. requires "a lot of major care." Dr. Bradley testified that D.R. needs to have major heart surgery to improve circulation and an additional surgery to repair a large wound in his abdominal wall that was caused by the gunshot wound. Further, Dr. Bradley stated that once the abdominal surgery was complete, it would take six to eight weeks for D.R's metabolism to reset. Dr. Bradley testified that D.R. would then need two months of gait training with a prosthesis and that, if everything went perfectly, D.R. would need six to eight months of medical care.

{¶6} D.R.'s attorney presented evidence of the cost to ODYS to house D.R., ODYS's inability to care for D.R. given his current medical condition and the safety risks

to D.R. from other residents of the facility. At the close of evidence, the defense moved to dismiss the firearm specification pursuant to Juv.R. 29(F)(2)(d). The defense argued that because of D.R's medical condition and the inability of ODYS to care for D.R., the court should dismiss the firearm specification from the complaint, which would then allow the court to sentence D.R. to something other than mandatory commitment to ODYS.

{¶7} The state opposed the defense's motion and argued that the cost to ODYS should not factor into the court's decisions and that because D.R. admitted to aggravated robbery, a three-year firearm specification and a serious youthful offender specification, the court was without discretion to consider anything other than a commitment to ODYS.

{¶8} At the conclusion of the hearing, the trial court dismissed the complaint against D.R. pursuant to Juv.R. 29(F)(2)(d) and held as follows:

> [U]pon due consideration the Court finds that based on the evidence presented, the child's significant medical conditions and needs cannot be properly met by the Department and his commitment to the current facilities would pose a risk to his health, safety, and well-being.

The court then released D.R. to his own custody.

{¶9} The state appeals, raising the following assigned errors:

> I. The trial court erred when it adjudicated D.R. guilty and dismissed the complaint because under Juv.R. 29(F)(2) the trial court can only take one of those actions.

> II. The trial court erred in dismissing the complaint under Juv.R. 29(F)(2)(d) because it was precluded from doing so by statute.

III.   The trial court abused its discretion in dismissing the complaint under Juv.R. 29(F)(2)(d) because the record did not support the finding that dismissal was in the best interest of the community and the child.

{¶10} D.R. argues the state has no jurisdiction to appeal because a Juv.R. 29(F)(2)(d) dismissal is a final verdict that may not be appealed by the state.   D.R. cites to *In re N.I.*, 191 Ohio App.3d 97, 2010-Ohio-5791, 944 N.E.2d 1214 (8th Dist.).

{¶11} As stated in *In re N.I.,* "[t]he state may appeal a juvenile court's delinquency decision only in limited circumstances."   Article IV, Section 3(B)(2), Ohio Constitution; R.C. 2945.67.   Pursuant to R.C. 2945.67(A), the state

> may appeal as a matter of right any decision * * * of a juvenile court in a delinquency case, which grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief * * * and may appeal by leave of court to which the appeal is taken any other decision, except the final verdict * * * of the juvenile court in a delinquency case.

{¶12} Thus, "[p]ursuant to R.C. 2945.67(A), the General Assembly has given the courts of appeals discretionary authority to decide whether to hear an appeal from a decision adverse to the state other than a final verdict."   *State v. Bistricky*, 51 Ohio St.3d 157, 555 N.E.2d 644 (1990); *In re N.I.*

{¶13} In *In re N.I.,* the trial court, after hearing evidence, found that the state proved the complaint beyond a reasonable doubt and adjudicated N.I. delinquent of rape. However, at the dispositional hearing, the court found that "substantial grounds exist to mitigate the delinquent child's conduct" and ordered the complaint dismissed against N.I.,

concluding that it was in both N.I.'s and the community's best interest to do so. In affirming the dismissal on appeal, this court noted that "[a]lthough the state normally has the right to appeal a decision by the trial court granting a motion to dismiss, in this case the trial court's decision to do so was a 'final verdict' to which double jeopardy attached." This court determined that a Juv.R. 29(F)(2)(d) dismissal effectively stood as an acquittal of the charges. As a result, the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Constitution of the state of Ohio prevents the state from initiating any further criminal proceedings against the juvenile based on the allegations contained in the complaint. *In re N.I.; see also In re Arnett*, 3rd Dist. Hancock No. 5-04-20, 2004-Ohio-5766.

{¶14} Although distinguishable from *In re N.I.* in that the present case involved an admission to the complaint while *N.I.*, involved a hearing to the trier of fact, the remaining facts are substantially similar. Here, like in *N.I.*, the court adjudicated the juvenile delinquent and then later dismissed the complaint pursuant to Juv.R. 29(F)(2)(d) in the best interest of the child and the community. The trial court, determined that although delinquent of the crime of aggravated robbery with firearm and serious youthful offender specifications, significant mitigation in the form of D.R.'s serious health conditions as well as ODYS' inability to care for and safeguard D.R. while in its custody, warranted dismissing the complaint.

{¶15} We find this court's decision to dismiss the complaint against D.R. to be a "final verdict" to which double jeopardy attached. *See In re N.I.; In re Arnett*. As such

and in keeping with this court's past precedent, we find that this court has no jurisdiction to hear the instant appeal.

**{¶16}** The case is dismissed.

It is ordered that appellee recover of appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
MARY J. BOYLE, A.J., DISSENTS WITH SEPARATE OPINION

MARY J. BOYLE, A.J., DISSENTING:

**{¶17}** I respectfully dissent. Although this case is somewhat analogous to the facts of *In re N.I.*, 191 Ohio App.3d 97, 2010-Ohio-5791, 944 N.E.2d 1214 (8th Dist.), there are some significant distinctions, including that the adjudication of delinquency was based on D.R.'s admissions to the complaint and his admission to the serious youthful offender specification. I believe the state's appeal does raise substantive issues that are subject to our review that include the juvenile court's authority pursuant to Juv.R. 29, as well as the procedures that are applicable for a dispositional sentence after a juvenile admits a serious youthful offender specification.

**{¶18}** We noted in *In re N.I.* that "even when there is a final verdict, however, an appellate court may review substantive rulings of law when it is presented with an underlying legal question that is capable of repetition yet evading review." *Id.* at ¶ 14,

citing *State v. Bistricky*, 51 Ohio St.3d 157, 555 N.E.2d 644 (1990), at syllabus. This is now the second instance that this court has been presented with a factual scenario where the trial court has ordered a dismissal pursuant to Juv.R. 29(F)(2)(d) after previously having adjudicated the juvenile delinquent.

{¶19} Juv.R. 29 clearly provides:

> Upon the determination of the issues, the court shall do ***one*** of the following:
>
> (1) If the allegations of the complaint, indictment, or information were not proven, dismiss the complaint;
>
> (2) If the allegations of the complaint, indictment, or information are admitted or proven, do any one of the following, unless precluded by statute:
>
> (a) Enter an adjudication and proceed forthwith to disposition;
>
> (b) Enter an adjudication and continue the matter for disposition for not more than six months and may make appropriate temporary orders;
>
> (c) Postpone entry of adjudication for not more than six months;
>
> (d) Dismiss the complaint if dismissal is in the best interest of the child and the community.

{¶20} In this case, the juvenile court not only entered an adjudication but also dismissed the complaint. Juv.R. 29 directs the court to take a single action provided by the rule, and in this case the court took at least two. This case also involves a serious youth offender ("SYO") specification.

{¶21} The dissenting judges, in *In re J.S.*, 136 Ohio St.3d 8, 2013-Ohio-1721, 989

N.E.2d 978, identified the statutory procedure for the SYO dispositional sentence and for invoking the adult portion of an SYO sentence and stated that "an SYO sentence has two parts: a juvenile portion and a stayed adult portion * * * the adult portions of the SYO sentences are akin to community control sentences * * *." *Id.* at ¶ 25. The dissent expressed its belief that the Ohio Supreme Court should establish what exactly an SYO sentence is; specifically,

> Is it a single sentence with juvenile and an adult portion, or is it instead separately a juvenile and an adult sentence? If it is a sentence with two portions, * * * does an error in one portion cause the SYO sentence to be only partially void as suggested in *State v. Fisher*, 128 Ohio St.3d, 2010-Ohio-6238, 942 N.E.2d 332?

*Id.* at ¶ 5.

{¶22} For these reasons, I would reach the merits of the state's appeal because it involves substantive issues beyond the final judgment in this case that are capable of repetition but will otherwise evade review.